**KEMLITE CORPORATION, Plaintiff-Respondent,**

v.

**CHASE AWNING AND MANUFACTURING COMPANY, Defendant-Appellant.**

No. 34822.

Missouri Court of Appeals, St. Louis District.

Dec. 4, 1973.

Application to Transfer Denied March 11, 1974.

**132**

Boles & Murphy, St. Louis, for defendant-appellant.

Strauss, Friedman & Sanders, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Plaintiff Kemlite Corporation sued the defendant, Chase Awning & Manufacturing Company for $3,280 owed, and the defendant counterclaimed for $9,500. The trial judge gave a judgment for plaintiff and denied defendant's counterclaim. This is an appeal by defendant from the judgment denying the counterclaim.

■ At the outset plaintiff-respondent contends that the appeal should be dismissed because Section 512.020 RSMo 1969, V.A.M.S., does not specifically authorize an appeal from an order overruling a motion for new trial. Other cases have avoided this technical rigidity, however, and we have heretofore treated the notice of appeal as if it had properly designated the judgment. See Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657 (1946); Clark v. Dubbs, 360 S.W.2d 288 (Mo.App.1962) [1] and Standley v. Western Auto Supply Co., 319 S.W.2d 924 (Mo.App.1959) [3].

Defendant-appellant Chase Awning and Manufacturing Company, was engaged in making and installing awnings and patio covers, using a fiberglass material. Plaintiff Kemlite Corporation manufactured fiberglass for such purposes. In late 1964 Mr. Neville Shinall, president of Chase Awning, and Mr. Alfred Menzer, president of Kemlite, met to discuss doing business. Nothing discussed at the meeting was reduced to writing. The testimony at trial indicates that Mr. Shinall emphasized Chase Awning's need for continuity in the color lines for the fiberglass, but there is no evidence that Mr. Menzer agreed Kemlite would furnish appellant with fiberglass as long as appellant required it and in fact Mr. Menzer denied any commitment to supply. Mr. Shinall admitted that he did not hire any additional salesmen nor purchase additional machinery as a result of the alleged "agreement," that the agreement did not require him to stock any minimum inventory of respondent's product, to advertise respondent's goods, or even to buy exclusively from respondent. Kemlite's prices were subject to change at any time and in fact were changed during the course of dealing.

Shortly after the meeting Chase Awning placed its first order with Kemlite. In June 1967 Kemlite notified its customers that it would discontinue manufacturing the fiberglass at the end of the year because the fiberglass was no longer profitable. At the time the two parties ceased business with each other, Chase Awning owed Kemlite $3,280 and had a fiberglass inventory worth about $1,400, unsaleable because of the colors involved.

■ Defendant contends that Kemlite breached its contract to supply Chase with fiberglass for so long as Chase wanted Kemlite's fiberglass. The testimony of Chase Awning's president shows that Chase Awning was not bound to do *anything,* not even to purchase the slightest quantity of fiberglass from Kemlite, but was entirely free to purchase from Kemlite's competitors. Nor was Kemlite bound to sell to Chase. Each order and acceptance constituted a separate contract. We are unable, however, to find any contract between the parties that Kemlite would accept all orders of Chase for any period of time, much less indefinitely.

Obviously Chase cannot recover for breach of a contract where that contract does not exist.

Judgment affirmed.

CLEMENS and McMILLIAN, JJ., concur.